**SIGNED this 01 day of November, 2005.**

_____
**FRANK R. MONROE
UNITED STATES BANKRUPTCY JUDGE**

_____

```
              UNITED STATES BANKRUPTCY COURT
                WESTERN DISTRICT OF TEXAS
                    AUSTIN DIVISION

IN RE:                          )
                                )
DAVID MEEKER                    )  CASE NO. 04-16460-FM
VICKI A. MEEKER                 )  (Chapter 13)
              DEBTORS           )
```

**MEMORANDUM OPINION ON CONFIRMATION
OF DEBTORS' AMENDED CHAPTER 13 PLAN**

The Court held a hearing on the confirmation of the Debtors' Amended Chapter 13 Plan ("Plan") on October 25, 2005. This is a core proceeding under 28 U.S.C. §157(b)(2). As such, this Court has jurisdiction to enter a final order herein pursuant to 28 U.S.C. §1334(a) and (b), 28 U.S.C. §157(a) and (b)(1), 28 U.S.C. § 151, and the Standing Order of Reference from the United States District Court for the Western District of Texas of all bankruptcy matters. This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law under Bankruptcy Rules 9014 and 7052.

**FACTS**

1

Debtors filed this Chapter 13 case on December 20, 2004. Schedules, Statements of Affairs, the Chapter 13 Plan, and other required pleadings were filed on January 3, 2005.

The §341 Meeting of Creditors was set for February 2, 2005 at 4:00 p.m. Although the docket sheet fails to reflect whether or not it was actually held, the Court presumes that it was. At that meeting, the Trustee requested a copy of the Debtors' 2004 Income Tax Return. The record does not reflect whether the tax return had actually been filed as of that date. Indeed, the record fails to establish when it was filed. All we know is that it was not received by the Trustee from the Debtor until August 11, 2005.

GMAC Mortgage Corporation, a home equity lender on the Debtors' property located at 14507 Robert I. Walker in Austin, Texas [now rental property] filed its Motion for Relief from Stay on February 22, 2005 alleging the Debtors had not made the January or February 2005 mortgage payments as required under the provisions of Chapter 13.

An Agreed Order on the GMAC Motion for Relief from Stay was entered April 11, 2005 which required the Debtors to remit regular post-petition monthly payments beginning April 1, 2005 and make an additional six payments of $584.58 beginning April 15, 2005 to cure the post-petition arrearages of January, February and March 2005.

The Chapter 13 Trustee filed an Objection to the Debtors' Claim of Exemptions on March 2, 2005.

The Trustee's Objection to Exemptions, which put in issue the total sum of $800.00 and which pointed out that the Debtors had

used the wrong value in claiming an exemption for their homestead somehow turned into a grudge match which included a Motion for Sanctions being filed by the Debtors against the Trustee claiming the Objection was not filed in good faith and was only for the purpose of harassing the Debtors and their counsel and increasing the costs of litigation. The initial Motion for Sanctions was ultimately withdrawn, but a second Motion for Sanctions was filed the same day the first Motion for Sanctions was withdrawn. After additional and generally unnecessary pleadings by both parties and several continuances, a hearing on the Trustee's Amended Objection and related Debtors' responses and Motions for Sanctions was held July 5, 2005. An Order was entered on the Objection to Exemptions on July 12, 2005.

The Trustee objected to the Debtors' Plan on July 13, 2005, a confirmation hearing was held on July 26, 2005 and the Order Denying Confirmation of the Plan was entered August 1, 2005.

An Amended Chapter 13 Plan was filed by the Debtors on August 24, 2005 which was set for hearing on October 25, 2005.

In the interim, after having received the Debtors' 2004 Income Tax Return, the Trustee discovered that the Debtors in 2004 had gross income in addition to that which was reflected upon their Statement of Affairs in the amount of $203,738.00 which came from an early disbursement from a 401K retirement account owned by the Debtors. Apparently, it was at or about this time that the Trustee also learned of business inventory and equipment that the Debtors owned through a sole proprietorship by the name of Bull Dog Small

3

Engines. The existence of this business, however, is reflected on the original Schedule I - Current Income of Individual Debtor(s) filed January 3, 2005. Such schedule makes it clear that the Debtors own such business and that they are "self-employed" and that they make approximately $2500.00 per month from such business. The record is unclear as to whether or not the Trustee was aware of this business at the 341 meeting and requested documents with regard thereto at that time or whether she only became aware of this business at the time of examination of the 2004 Tax Return and pursuant to that discovery requested certain business documentation and information. Regardless, the Debtors have not complied with her requests.

Additionally, and more problematic, is that the Debtors have never amended their schedules to itemize and disclose the personal property assets owned in that business or any of the liabilities attributable thereto. Mr. Meeker testified at the confirmation hearing that he did not think that was the type of thing that he needed to schedule. However, it was apparent from his testimony that he has some type of financial arrangement with Textron Corporation, either in the form of a lease or some other type of financing transaction and that he had undisclosed amounts of inventory at the business on the Petition date and does now as well. Unfortunately, no one chose to further develop these facts at the hearing so the Court is in the dark as to the specifics of the Debtors' business.

It should also be noted that the Debtors claimed as a business

4

homestead the property located at 100 S. Pierce, Burnet, Texas in addition to their residential homestead. This is another reason why the issue of the existence of the business and other previously undisclosed assets seems to be something that would have come to the attention of all parties in the case at a much earlier date.

The Debtors admit the Amended Plan is infeasible and not ready for confirmation. The Debtors beg for a third chance to get it right claiming that a pending Motion by Wells Fargo to Lift the Stay on their residential homestead and the attendant accounting problems in determining how far behind the Debtors really are in making payments, which is set for hearing on October 31, 2005, is holding up their ability to propose a feasible plan.

Wells Fargo claims that the post-petition payments for May, June and July 2005 in the amount of $3,558.50 each have not been made. Of course, the way these mortgage companies do their accounting, it is not possible to tell from anything they actually file of record which are the exact month(s) which may or may not have been paid. However, the claim of the Debtors' not being current on the post-petition home mortgage casts doubt on the Debtors' ability to propose and perform under a feasible plan. Again, no questions in this regard were asked of Mr. Meeker while he was on the stand by anyone.

## **CONCLUSIONS**

All parties admit the Amended Plan is not confirmable as it is currently not feasible and will need further amendment with regard

to at least the treatment of the Wells Fargo claim. Further, and more significantly, we have the problem that the Schedules have never been amended to properly reflect either what business assets the Debtors own and use in the operation of Bull Dog Small Engines or what the financial obligations of the Debtors are in that regard [other than that disclosed concerning the business homestead]. And, one would suppose that the Debtors would want to address those claims one way or another in their Plan. More disturbingly, we have Mr. Meeker's testimony on the stand feigning ignorance that he needed to list assets and liabilities that relate to that business even though the existence of this business and the business homestead from where it is operated was included in the filing of Schedules on January 5, 2005. Unbelievably, however, the issue appears to only have surfaced in the past sixty days.

Some cases drag on inexplicably for any number of reasons. This one had two Plans being admittedly unconfirmable primarily because not all of the facts (assets and liabilities) relating to the Debtors' financial picture and their ability to produce income have been disclosed in the manner in which the Code requires. Since all of that is the responsibility of the Debtors, it seems that the appropriate action to take (now that we are ten and one-half months into a case that if properly handled by all parties would have been disposed of one way or another several months ago) is to assess the judgment against the party that failed to carry out its responsibility the most.

There is no reason in this case to give the Debtors a third

bite of the apple as (1) there is absolutely no reason to expect that they will be able to be successful and (2) they have yet to make full disclosure of their financial picture to the Court.

Accordingly, the denial of confirmation will be with prejudice and the Debtors given ten (10) days to convert to Chapter 7 or suffer dismissal of the case.

###